IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HOLLY B.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

Case No. 6:20-cv-00355-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Holly B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title XVI Social Security Income and Title II Disability and Widow's Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in April 1965, plaintiff alleges disability beginning March 31, 2014, due to anxiety, depression, bipolar disorder, and left shoulder and knee pain. Tr. 284-97, 300-08, 343. Her applications were denied initially and upon reconsideration. Tr. 156-69, 174-82. On January 30, 2019, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert. Tr. 34-59. On February 21, 2019, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-33. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 19. At step two, the ALJ determined plaintiff's obesity, lumbar degenerative disc disease, degenerative joint disease of the left shoulder and left ankle, bipolar disorder, and anxiety disorder were medically determinable and severe. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 19-21.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R § 404.1567(b) and § 416.967(b) except:

> [She can] occasionally lift and carry up to 20 pounds; frequently lift and carry 10 pounds or less; sit for six hours in an eight hour day; stand or walk in combination for up to six hours in an eight hour day; and push and pull as much as she can lift and carry. She can occasionally reach overhead with the upper left extremity. The claimant is limited to simple routine tasks; simple work-related decisions; and occasional interaction with coworkers, supervisors and the public. The claimant's time off task can be accommodated by normal breaks.

Tr. 21.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 26. At step five, the ALJ concluded there were a significant number of jobs in the national economy that plaintiff could perform despite her impairments, such as photocopy machine operator, small products assembler, and electronics worker. Tr. 27-28.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting her subjective symptom testimony; (2) rejecting the lay statements of her sister, Linda B.; and (3) rejecting the medical opinions of Scott Alvord, Psy.D., and counselor Christine Guza. Pl.'s Opening Br. 5-6 (doc. 17).

### I.     Plaintiff's Testimony

Plaintiff asserts the ALJ erred by discrediting her subjective symptom testimony concerning the extent of her mental impairments.[2] When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[2] Plaintiff does not challenge the ALJ's treatment of her physical symptom testimony via this appeal. Pl.'s Opening Br. 16-19 (doc. 17); see also Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (courts "review only issues which are argued specifically and distinctly in a party's opening brief"). However, the Court has reviewed this aspect of the ALJ's decision and finds no error. Tr. 22-23.

Page 3 – OPINION AND ORDER

discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that she was mentally unable to work due to "blackouts." Tr. 50-51. She reported a drug-related suicide attempt in June 2015 because she felt she "couldn't handle life" and that her "kids and grandkids were better off" without her. Tr. 49-50. Plaintiff endorsed being diagnosed with bipolar disorder prior to her suicide attempt and was in counseling at that time, but currently has a better "understanding" of her limitations through additional treatment. Tr. 48, 50-51.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22. Specifically, the ALJ cited to plaintiff's inconsistent statements, symptom control with medication, and the lack of corroborating medical evidence. Tr. 23-26.

Concerning plaintiff's testimony about disabling "blackouts," the ALJ provided legally sufficient reasons supported by substantial evidence. An ALJ may discredit a claimant's testimony if it is inconsistent with the record as a whole. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

2003). Aside from plaintiff's self-reports to the Social Security Administration, the record is completely devoid of any evidence that plaintiff experienced blackouts. Plaintiff did not report this allegedly disabling symptom to her myriad providers, despite years of consistent treatment. See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ may rely on a failure to report symptoms to health care providers in affording less weight to the claimant's testimony); see also Coaty v. Colvin, 2015 WL 1137189, *4-5 (D. Or. Mar. 11, 2015), aff'd, 673 Fed.Appx. 787 (9th Cir. 2017) ("contemporaneous self-reports to medical providers, as memorialized by their treatment notes, are the most accurate portrayal of functioning" where "there is a remote date last insured"). In addition, plaintiff stated to Dr. Alvord that her biggest impediment to working is not blackouts, but rather "spinal arthritis." Tr. 1189.

However, the ALJ's assessment of plaintiff's remaining mental health testimony is not supported by substantial evidence. It is well-established that cycles of improvement and debilitating symptoms are a "common occurrence" with mental impairments and do not necessarily create inconsistencies in the record. Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). As such, it is error "to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." Id.

As discussed in greater detail below, plaintiff's manic and depressive symptoms are corroborated by the record. Tr. 532, 534, 538, 587, 669, 760, 766, 770, 775, 778, 780, 785, 856, 858, 1082-107, 1184, 1189. As plaintiff correctly points out, the control of psychotic symptoms with Latuda is not equivalent to the control of all psychological symptoms. While Latuda adequately controlled plaintiff's psychotic symptoms, the record reflects plaintiff's continued struggles with depression, anxiety, and mania, despite regular treatment. Tr. 481, 673, 681, 695, 802, 807, 827, 837, 986-87, 1115, 1127, 1139, 1151.

Finally, "whether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). Accordingly, the ALJ may not rely exclusively on the lack of corroborating medical evidence where, as here, the remaining reasons proffered for discounting the claimant's testimony are legally insufficient and/or not supported by substantial evidence.

In sum, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements regarding the extent of her mental impairments. The ALJ's decision is reversed in part as to this issue.

## II.     Third-Party Testimony

Plaintiff contends the ALJ failed to provide a legally sufficient reason, supported by substantial evidence, to reject Linda B.'s third-party testimony. Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. Id. (citation and internal quotation omitted).

In May 2017, Linda B. completed a "Third-Party Function Report" in support of plaintiff's applications. Tr. 350-57. Linda B. indicated plaintiff's physical and mental impairments have "a direct effect on [her] ability to maintain stable and consistent patterns necessary for employment." Tr. 350. She explained that plaintiff is unable to maintain life patterns, sleep, and self-care. Tr. 350-55. She also discussed how plaintiff needed verbal and written reminders to take care of personal and household needs. Tr. 351-53. Finally, she described how plaintiff's bipolar disorder

symptoms adversely affected her ability to interact with others and follow instructions. Tr. 354-56.

The ALJ "considered the statements made by Linda [B.], the claimant's sister, in the Third Party Function Report." Tr. 20. Plaintiff is correct, however, that the ALJ did not otherwise discuss or weigh Linda B.'s testimony. Such an omission would be harmless if the ALJ validly discounted similar evidence. See Molina, 674 F.3d at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited"). Here, however, the ALJ erred in evaluating plaintiff's subjective symptom testimony and the medical record tends to support, rather than detract, from both plaintiff's and Linda B.'s statements. Therefore, the ALJ's error regarding the lay testimony was not harmless.

### III.    Medical Opinion Evidence

Plaintiff argues the ALJ improperly discredited the medical opinions of examining Dr. Alvord and treating counselor Ms. Guza.

#### A.    Dr. Alvord

At the time of plaintiff's applications, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinions of treating doctors are accorded greater weight than those of examining doctors, and the opinions of examining doctors are entitled to greater weight than those of a non-examining doctors. Id. To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons, supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by

another doctor's opinion, it may be rejected by specific and legitimate reasons, supported by substantial evidence. Id.

In January 2019, Dr. Alvord conducted a psychological evaluation of plaintiff that included a review of her medical records, clinical interview, and mental status examination. Tr. 1188. Based on this evaluation, Dr. Alvord's "Diagnostic Impressions" were as follows:

> [Plaintiff] presents as an individual who meets the criteria for Schizoaffective Disorder Bipolar Type. Bipolar I should be ruled out although generally I see Schizoaffective Disorder as a more reasonable diagnosis. She is treated with antipsychotics/anxiolytic/antidepressants now. She continues to experience episodic auditory and visual hallucinations. Her history of occupational instability, homelessness, and general presentation during this encounter leads me to believe that her symptoms are chronic.
>
> She is likely an individual who will decompensate fairly rapidly even with treatment if she is placed in a structured work environment where she has to deal with coworkers, authority figures, etc. I will also opine [to] an Anxiety Disorder not otherwise specified. Her symptoms are considered chronic and unfortunately her prognosis is guarded given the nature, duration, and severity/type of her illness. She should be monitored closely for increasing suicidal ideation.

Tr. 1190-91.

In a corresponding "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," Dr. Alvord checked boxes evincing that plaintiff was: moderately impaired in her ability to understand and remember simple instructions, and carry out simple instructions; and markedly impaired in her ability to make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, respond appropriately to usual work situations and to changes in routine work setting, and interact appropriately with the public, supervisors, and coworkers.[3] Tr. 1192-

---

[3] This form included five rankings: none, mild, moderate, marked, and extreme. Tr. 1192. "Moderate" is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily," and "marked" is defined as a "serous limitation [that results in] a substantial loss in the ability to effectively function." Id.

Page 8 – OPINION AND ORDER

93. Considering plaintiff's history of psychiatric problems, Dr. Alvord opined that she would be unable to maintain a regular work schedule "more than 4 days per month." Tr. 1194.

The ALJ assigned "little weight" to Dr. Alvord's assessment because it was "not consistent with the remaining evidence." Tr. 24-25. Further, the ALJ found that Dr. Alvord's report was "based on a one-time examination highly dependent on the claimant's subjective complaints" and that the "record contains no history of psychiatric hospitalization, voluntary or involuntary to support his conclusion." Id.

Initially, although the ALJ may consider the nature and extent of plaintiff's relationship with Dr. Alvord, that alone cannot constitute a legally sufficient reason for rejecting his opinion. While, in some settings, an ALJ may reject an opinion based largely on a claimant's subjective complaints, "self-reporting" is not a legitimate reason to reject a psychiatric evaluation. See Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) ("the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness"). A claimant also does not need to be hospitalized to prove disability. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits.").

Nevertheless, inconsistency with the record is a proper basis to reject a medical provider's opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, however, substantial evidence does not support the ALJ's decision regarding the moderate and marked limitations assessed by Dr. Alvord. In fact, the ALJ overlooked many salient aspects of Dr. Alvord's report that were indicative of chronic mental impairment and supported his work-related limitations. During the clinical interview and mental status examination, Dr. Alvord noted plaintiff's labile affect, bad mood, slightly tangential thought processes, paranoid and religious themed delusions,

globally slowed psychomotor movements, impaired intellectual functioning and insight, and difficulties with attention/concentration. Tr. 1189-90. He repeatedly denoted that "[v]alidity issues were not suspected." Tr. 1189. When contrasting his interview impressions with available records, Dr. Alvord also determined that plaintiff's mental impairments were chronic and involved a history of "dramatic mood cycling," which would impact her ability to function normally in a structured work environment. Tr. 1189-90.

The treatment records from Ms. Guza and plaintiff's other longstanding mental health counselor, Richard Browning, are consistent with Dr. Alvord's opinion. Their chart notes reflect that, while Latuda controlled plaintiff's psychotic symptoms, she still struggled with her bipolar disorder. Tr. 481, 673, 681, 695, 986-87. In particular, during her myriad counseling sessions, plaintiff reported chronic depression, anxiety, and irritability that interfered with her ability to complete daily activities, despite medication and counseling. Tr. 802, 807, 827, 837, 1115, 1127, 1139, 1151. Plaintiff also had trouble making decisions, staying on topic, and interacting with others. Tr. 512, 655, 695, 711, 769, 774, 779, 784, 789, 794, 799, 803, 808, 812, 816, 820, 824, 828, 1045, 1181-82, 1185.

The ALJ therefore committed harmful error in weighing this evidence. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

**B.     Ms. Guza**

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other medical sources" can be used to determine the severity of the impairment and how it affects the claimant's ability to work. SSR 06-03p, available at 2006

WL2329939. To reject the opinion of an "other medical source," the ALJ must provide a germane reason supported by substantial evidence. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).

Since June 2016, plaintiff attended individual therapy with Ms. Guza for bipolar disorder two to four times per month. Tr. 1184. In January 2019, Ms. Guza submitted a written report regarding plaintiff's present status and functional capacities. Tr. 1179-87. The narrative portion states, in relevant part:

> [Plaintiff] fulfills the…criteria for Bipolar Disorder 1, most recent episode manic with psychotic features; moderate amphetamine-type substance stimulant use disorder in sustained remission. Her predominant symptoms are depression, hypomania and mania, impulsivity, irritability, anger, reactivity, difficulty concentrating, racing thoughts and when not taking her psychiatric medications as prescribed visual hallucinations.
>
> Client's mental health symptoms would impair her ability to functions in a work-setting mainly due to her impulsivity, reactivity, irritability, anger and difficulties concentrating, symptoms mostly attributed to hypomania and mania. Client's depressive symptoms may also impair with ability to concentrate, to go to work and impact her decision-making. Client struggles with maintain her irritability with others, family and friends, which can cause interpersonal problems and increased arguments. Client's irritability and anger may interfere with her ability to respond appropriately with the public, co-workers and her supervisors, specifically criticism from a supervisor. Her symptoms of impulsivity, racing thoughts and difficulties concentration impair her ability to remember important appointments or to be able to take in the appropriate information to follow detailed directions without significant frustration and feelings of being overwhelmed. The latter can lead to irritability and anger directed towards others, even if client is aware of the importance of the relationship or the effect it may have on others.

Tr. 1184-85.

In a corresponding "Medical Source Statement of Ability to Do Work-Related Activities," Ms. Guza checked boxes evincing that plaintiff was: moderately impaired in her ability to understand and remember simple instructions, carry out simple instructions, make judgments on simple work-related decisions, and respond appropriately to usual work situations and to changes in routine work setting; markedly impaired in her ability to understand and remember complex

Page 11 – OPINION AND ORDER

instructions, carry out complex instructions, and interact appropriately with the public, supervisors, and coworkers; and extremely impaired in her ability to make judgments on complex work-related decisions.[4] Tr. 1181-82. Ms. Guza also opined that plaintiff's psychiatric problems would prevent her from being able to maintain a regular work schedule "3 to 4 days per month." Tr. 1183.

The ALJ rejected Ms. Guza's opinion because "she is not an acceptable medical source under the regulations and her depiction of the claimant's deteriorating mental health is wholly inconsistent with treatment records covering 2016, 2017, and 2018, which show the claimant's psychological symptoms are adequately controlled with Latuda." Tr. 24. The ALJ also noted that marked and extreme limitations in functioning cited by Ms. Guza are "inconsistent with the evidence of record as a whole." Tr. 25.

The difference between an acceptable medical source and a non-acceptable medical source is the standard of review applied. As plaintiff's treating mental health provider, Ms. Guza's statements concerning plaintiff's overall functioning and impairments are clearly relevant and probative. Therefore, Ms. Guza's status as a non-acceptable medical source is not, alone, a legally sufficient reason to reject her opinion.

Turning to the ALJ's second rationale, substantial evidence is lacking. In particular, the ALJ impermissibly cherry-picked isolated instances of psychotic symptom improvement to demonstrate that all of plaintiff's mental symptoms are adequately controlled with medication. As mentioned above, while Latuda controlled psychotic symptoms, plaintiff still struggled with her manic and depressive symptoms, as well as her anxiety and irritability; plaintiff also had trouble making decisions, staying on topic, and interacting with others. Ms. Guza's treatment notes from 2016 through 2018 well-document these ongoing symptoms despite some cycles of improvement.

---

[4] This form contained the same rankings and definitions as Dr. Alvord's form. Tr. 1182.

Tr. 470-71, 481, 516, 720, 863, 986-87, 988, 1177-78. In addition, Ms. Guza's chart notes are consistent with those of Mr. Browning. Tr. 508, 513, 1112-13, 1118-19, 1124-25, 1130-31, 1136-37, 1142-43, 1148-49, 1154-55. Significantly, Ms. Guza and Mr. Browning are the only mental health providers in the record before the Court. The ALJ's evaluation of the medical opinion evidence is reversed.

### IV.     Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly weigh plaintiff's and Linda B's testimony concerning plaintiff's mental impairments, as well as the medical opinions of Dr. Alvord and Ms. Guza. The record is nonetheless ambiguous regarding the extent of plaintiff's allegedly disabling impairments. On one hand, plaintiff consistently endorsed significant issues with bipolar disorder, depression, and anxiety, even with counseling and medication, despite some waxing and waning of symptoms. On the other hand, plaintiff has made

several inconsistent and uncorroborated statements regarding the severity of her impairments. Some of these inconsistent statements appear in Dr. Alvord's report and seemingly form the basis of his opinion (at least in part), which is the only medical opinion from an acceptable medical source in the record before the Court.

For instance, Dr. Alvord's diagnosis of schizoaffective disorder primarily relied upon plaintiff's self-reported delusions and hallucinations, which occurred "a few times a week." Tr. 1189-90. However, the record only contains two reports of hallucinations after plaintiff was prescribed Latuda – in September 2016 and November 2018 – and both instances coincided with significant situational stressors. Tr. 663, 1185; see also Tr. 470, 986-88, 1112, 1118, 1124, 1130, 1136, 1142, 1148, 1154, 1177, 1184 (hallucinations and other psychotic symptoms well-managed by Latuda). Additionally, the record does not indicate any prior diagnosis of schizoaffective disorder. It is also unclear how the death of plaintiff's husband in January 2017 and subsequent period of homelessness affected the extent of her psychological symptoms. See Tr. 1185 (Ms. Guza indicating that plaintiff's mental impairments had recently worsened due to life events).

As such, further proceedings are required to resolve this case. See Treichler, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Upon remand, the ALJ must reevaluate the evidence of record and, if necessary, reformulate plaintiff's RFC and obtain additional VE testimony.

Page 14 – OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 26th day of April, 2021.

                                            /s/ Jolie A. Russo
                                              Jolie A. Russo
                                  United States Magistrate Judge